UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x
MARILYN BOSCO o/b/o B.B.,                :

            Plaintiff,         :        **REPORT AND RECOMMENDATION**

        -against-           :        **10 Cv. 07544 (LTS)(MHD)**

MICHAEL J. ASTRUE, COMMISSIONER   :
OF SOCIAL SECURITY,
                     :
          Defendant.
----------------------------------x

**TO THE HONORABLE LAURA TAYLOR SWAIN, U.S.D.J.:**

    Plaintiff Marilyn Bosco brings this case on behalf of her five-year-old son B.B., seeking to overturn the Social Security Administration's determination that B.B. is not entitled to child's survivor insurance benefits on the wage-earnings record of plaintiff's late husband. Specifically at issue is whether B.B., who was born by means of in vitro fertilization after the death of his biological father, qualifies as the insured's "child" within the meaning of 42 U.S.C. §§ 402(d)(1) and 416(e). We review the parties' cross-motions for judgment on the pleadings and, for the reasons discussed below, recommend that judgment be entered in favor of defendant.

## I. The Facts

After five or six years of unsuccessfully attempting to conceive a child together, plaintiff and her husband began the process of in vitro fertilization treatments in late 2003, at Reproductive Medicine Associates of New Jersey ("RMA NJ"). (Compl. 2; Answer App. 107). The couple underwent two separate fertilization cycles -- in the fall of 2003 and, again, in January 2004 -- during which several embryos were formed by the in vitro union of plaintiff's ova with her husband's sperm. (Id. at 3).

In advance of each fertilization procedure, plaintiff and her husband each signed a "Consent for Embryo Cryopreservation (Freezing and Storage)," which provided "I/we acknowledge RMA's policy to treat CPE [cryopreserved embryos] as the joint property of both partners and agree that, in the event of the death of one of us, the ownership and/or other rights (to determine disposition) of any CPE's shall revert to the surviving partner." (Id. at 3-4; Answer App. 124).

Between 2003 and 2005, plaintiff underwent three separate embryo transfer procedures. Two of these transfer procedures resulted in confirmed pregnancies. (Compl. 3-4).   However,

sadly, both pregnancies ended in miscarriage. (Id.). To add to the couple's misfortune, on July 6, 2005, shortly after plaintiff's second miscarriage, her husband passed away as the result of a pulmonary blood clot. (Id. at 4). He was, at the time, a resident of New York State. (Answer App. 13).

In December 2006, following the death of her husband, plaintiff underwent an embryo transfer procedure utilizing two of the remaining embryos that had been formed during the January 2004 in vitro fertilization procedure. (Compl. 5). This transfer procedure proved successful, leading to B.B.'s birth on May 27, 2007.[1] (Id.).

## II.  Procedural History

On June 21, 2007, plaintiff filed an application with the Social Security Administration ("SSA") for survivor child's insurance benefits for B.B. (Answer App. 54-55). The SSA denied plaintiff's application upon initial review (see id. at 65) and again, upon reconsideration, following plaintiff's submission of

---

[1] B.B. was born clinically blind and severely disabled. (Pl. Mem. in Supp. of Pl.'s Mot. for J. 3-4). He has been diagnosed with mild cerebral palsy and a seizure disorder that causes him to experience multiple seizures daily. (Id.). B.B. receives Supplemental Security Income disability benefits from the Social Security Administration, which are not at issue in this case. (Def. Mem. in Supp. of Mot. for J. 1 n.2).

a state-court-issued order of filiation and supplementary evidence that her husband had consented to plaintiff using his genetic material to give birth to a child after his death. (Compl. 5-6; see Answer App. 32-35, 101-28).

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"), but waived her right to appear at the hearing. (See Answer App. at 26, 30). In a decision dated October 29, 2009, the ALJ concluded that B.B. is not entitled to child's survivor benefits. (See id. at 9-19). Looking first to the state intestacy law, the ALJ found that B.B. had been conceived after the death of his father and, accordingly, is deemed a non-marital child under New York law. (Id. at 15 n. 3 (noting that death of a spouse terminates a marriage)). The ALJ determined that, while New York intestacy law affords inheritance rights to children conceived before the decedent's death and born thereafter, it does not provide for children conceived after the decedent's death. (Id. at 15). In concluding that New York's intestacy law "provides no statutory authority for children conceived and born after the father's death to inherit in intestacy from his estate," the ALJ noted the fact that the New York State Assembly had failed to enact two bills in 2007 that were purportedly intended to create new inheritance rights for children born by means of in vitro fertilization and children

4

posthumously conceived. (Id. at 15-16); see A.B. 4421, 230th
Leg. (N.Y. 2007); A.B. 5181, 230th Leg. (N.Y. 2007). The ALJ
held that the order of filiation declaring the paternity of
plaintiff's husband was not sufficient to establish B.B.'s
inheritance rights under New York intestacy law and, further,
was not binding on the SSA, in light of agency Ruling 83-37c.[2]
(Id. at 16-17). The ALJ further cited the New York Surrogate's
Court decision In re Martin B., 17 Misc. 3d 198, 201, 841
N.Y.S.2d 207 (Sur. 2007), as supporting the conclusion that New
York's intestacy statute does not provide inheritance rights for
posthumously conceived children. (Id. at 17). In light of these
findings, the ALJ concluded that B.B. is not entitled to inherit
from his biological father under the intestacy law of New York.
(Id.).

    The ALJ then turned to the alternative benefit-
qualification provisions of the Social Security Act. He

---

[2] Under Ruling 83-37c the SSA deems itself bound by state
court decisions in actions to which the agency was not a party
if "the following prerequisites are found: (1) An issue in a
claim for Social Security benefits previously has been
determined by a State court of competent jurisdiction; (2) this
issue was genuinely contested before the State court by parties
with opposing interests; (3) the issue falls within the general
category of domestic relations law; and (4) the resolution by
the State trial court is consistent with the law enunciated by
the highest court in the State." S.S.R. 83-37c (adopting the
reasoning set forth in Gray v. Richardson, 474 F.2d 1370 (6th
Cir. 1973)).

concluded that, according to the SSA's operations manual, a posthumously conceived child cannot qualify as a "child" under any of the alternative statutory mechanisms set forth in 42 U.S.C. § 416(h)(3). (Id. at 18). Accordingly, the ALJ affirmed the SSA's prior denial of child's survivor benefits for B.B. (See id.).

The SSA's Appeals Council denied plaintiff's request for review on May 13, 2010. (Id. at 3). In a lengthy explanation, the Appeals Council rejected plaintiff's contention that "conception" refers to the formation of a zygote, or fertilized ovum, and held that B.B. had not been conceived before the time of his father's death. (Id. at 4). The Appeals Council explained that, "in accordance with section 216(e) of the Social Security Act [42 U.S.C. § 416(e)], a zygote is not considered a child for the Social Security Administration (SSA) purposes, and therefore cannot be entitled to child's insurance benefits." (Id.). The Appeals Council noted that "the State Courts of New York have not granted any status for children conceived by artificial means and born after an individual's death." (Id.). It also concluded that the court order of filiation and the documentary evidence that plaintiff had submitted as proof that her husband had willingly participated in the in vitro fertilization process and presumably would have acknowledged and supported B.B. if he

6

had lived were not sufficient to establish B.B.'s inheritance rights under New York intestacy law. (Id. at 4-5). Specifically, the Appeals Council found that, although plaintiff had demonstrated the paternity of B.B.'s father by "clear and convincing evidence," she had failed to prove that the deceased had "openly and notoriously" acknowledged B.B. as his child. (Id. at 5). Finally, the Appeals Council noted that pursuant to the SSA's Programs Operations Manual System, B.B. could not qualify for child's survivor benefits under any of the alternate definitions of "child" set forth in 42 U.S.C. § 416(h)(3), because "a child conceived by artificial means after the wage earner's death can be entitled to survivor benefits only if he has inheritance rights under the applicable intestacy law." (Id. at 5).

Having exhausted her administrative remedies, plaintiff filed this action on October 4, 2010, seeking to overturn the SSA's denial of child's survivor insurance benefits for her son. The parties each filed a motion for judgment on the pleadings pursuant to Rule 12(c) and, at the court's direction (Order, dated May 29, 2012 (docket no. 14)), submitted supplemental briefs addressing the impact on this case of the Supreme Court's May 21, 2012 ruling in Astrue v. Capato ex rel. B.N.C., 132 S. Ct. 2021, 2025 (2012).

7

## III. Standard of Review

After an applicant for Social Security benefits has exhausted his or her administrative remedies, the SSA's "final decision" is subject to judicial review by the district court. 42 U.S.C. § 405(g). The Second Circuit has held that "a 'final decision' by the SSA is rendered when the Appeals Council either considers the application on the merits or declines a claimant's request for review, and not simply when the ALJ issues its decision." Polard v. Halter, 377 F. 3d 183, 191 (2d Cir. 2004); accord 20 C.F.R. §§ 404.955; Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012); Higginbotham v. Barnhart, 405 F.3d 332, 336 (5th Cir. 2005); O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994); Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1067 (11th Cir. 1994).

Pursuant to sentence four of 42 U.S.C. § 405(g), a district court may enter a judgment affirming, modifying, or reversing a decision of the Commissioner of Social Security, with or without remanding the cause for rehearing. See Raitport v. Callahan, 183 F.3d 101, 104 (2d Cir. 1999). In contrast, pursuant to sentence six of 42 U.S.C. § 405(g), the district court may "remand without making any substantive ruling as to the correctness of the Commissioner's decision, but only (i) where the Commissioner

so moves before answering the complaint, or (ii) where additional, material evidence is required that was for good cause not presented before the administrative agency." Id.

The district court must regard the SSA's findings of fact, as well as its inferences and conclusions drawn from such facts, as conclusive, provided that they are supported by "substantial evidence." Id.; see also Thomas v. Astrue, 674 F. Supp. 2d 507, 520 (S.D.N.Y. 2009). Substantial evidence is "more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938)); see Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). As for the agency's conclusions of law, they are "are reviewable in their entirety." Adams v. Weinberger, 521 F.2d 656, 658 (2d Cir. 1975) (quoting Herbst v. Finch, 473 F.2d 771 (2d Cir. 1972)). Accordingly, the court "reviews de novo whether the correct legal principles were applied and whether the legal conclusions made by the [SSA] were based on those principles." Thomas, 674 F. Supp. 2d at 520.

## IV.  The Applicable Law

### a. Child's Survivor Insurance Benefits Under the Social Security Act

The 1939 amendment of the Social Security Act, Pub. L. No. 379 § 202, 53 Stat. 1363-67 (1939), established child's survivor insurance benefits for the dependent minor children of deceased insured workers. See 42 U.S.C. § 402(d)(1)(c)(ii); Adams, 521 F.2d at 659 ("The purpose… is to provide support to children who have lost either the actual support of an insured parent or the anticipated support which that parent would have been expected to give had his death not intervened.").

To qualify for child's survivor insurance benefits from a deceased parent, an applicant must meet four basic criteria -- that is, he or she must: (1) qualify as a "child" of the insured, as defined by the Social Security Act; (2) be unmarried; (3) be below a specified age limit (18 or 19) or be under a disability that began before he or she reached age 22; and (4) be "dependent" on the insured, as statutorily defined, at the time of the insured's death. Capato, 132 S. Ct. at 2027 (citing 42 U.S.C. § 402(d)(1)).

### i. "Child"

42 U.S.C. § 416(e) defines the term "child" to mean, inter alia, "the child or legally adopted child of an individual."[3] The SSA has interpreted this vague tautology in light of § 416(h), deeming that an individual can only qualify as a "child" under § 416(e) if he or she is able to satisfy one of several criteria outlined in § 416(h). See 20 C.F.R. § 404.355(a). The Supreme Court has held that this interpretation of § 416(e) is entitled to Chevron deference. Capato, 132 S. Ct. at 2033.

For purposes of this case, there are two sub-sections of § 416(h) that are of particular significance -- 416(h)(2)(A) and 416(h)(3)(C). Sub-section 416(h)(2)(A) provides, in essence, that applicants who would be eligible to inherit intestate personal property from the insured according to the law of the insured's domiciliary state are deemed "child[ren]" under the Social Security Act. 42 U.S.C. § 416(h)(2)(A); see also 20 C.F.R. § 404.355(a)(1). Although the Act is ambiguous as to which version of the domiciliary state's law should be applied,

---

[3] An applicant may also qualify for child's survivor insurance benefits if he or she is the stepchild, grandchild, or step-grandchild of the insured, and satisfies additional statutory criteria. See 42 U.S.C. §§ 416(e)(2)-(3); 20 C.F.R. §§ 404.356-404.358.

temporally-speaking,[4] SSA regulations provide that the agency will apply the version that is in effect at the time that it

---

[4] 42 U.S.C. § 416(h)(2)(A) provides, in relevant part,

> In determining whether an applicant is the child… of a fully or currently insured individual for purposes of this subchapter, the Commissioner of Social Security shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, or, if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia.

(emphasis added). As the Ninth Circuit noted, "[w]ere the applicable state law that which existed at the time of the decedent's death, the statute would require a prepositional phrase to that effect, or a change in the verb tense to present perfect subjective, i.e. 'such law as would have been applied.'" Owens v. Schweiker, 692 F.2d 80, 82 (9th Cir. 1982) (quoting Copeland v. Califano, No. 78-1004, at 5 (C.D. Ill. June 20, 1979)). We agree with this grammatical analysis and conclude that the provision is ambiguous as to the temporal choice of law. The ambiguity of the provision is further highlighted by the conflicting interpretations of numerous federal courts. Compare DeSonier v. Sullivan, 906 F.2d 228, 232-34 (6th Cir. 1990) (summarizing cases and holding that SSA must apply the law in effect at the time of agency's decision), Owens, 692 F.2d at 82 (favoring version in effect at time of agency's decision), and Carter v. Sec'y of Health & Human Servs., 625 F.Supp 281, 289 (E.D. Mich. 1985) (same), with Hart v. Bowen, 802 F.2d 1334, 1336 (11th Cir. 1986) (favoring version in effect at time that application is filed), and Cox v. Schweiker, 684 F.2d 310, 318-19 (5th Cir. 1982) (same), and with Adens ex rel. Green v. Schweiker, 733 F.2d 545, 547 (3d Cir. 1985) (SSA must follow state law concerning the retroactivity of amended versions of intestacy law), and Barton v. Sullivan, 774 F.Supp. 1151, 1158 (S.D. Ind. 1991) (same).

makes its final decision, unless doing so would render the applicant ineligible for benefits, in which case the agency will apply whichever of several options is the version most beneficial to the applicant.[5] See 20 C.F.R. § 404.355(b)(4).

---

[5] We find that the agency's reading of 42 U.S.C. § 416(h)(2)(A) is permissible in light of the plain text of the provision, and is reasonable in light of the purposes of the provision and the Social Security Act as a whole. Because, as discussed in the prior footnote, we find the provision to be ambiguous as to which version of state intestacy law should apply, the "question for the court is whether the agency's [interpretation, which has been subject to public notice-and-comment rulemaking] is based on a permissible construction of the statute." Chevron, U.S.A., Inc. v. N.R.D.C., Inc., 467 U.S. 837, 843 (1984). We conclude that it is.

The purpose of 42 U.S.C. § 416(h)(2)(A) is to clearly and predictably identify eligible beneficiaries for Social Security benefits based on their relationship to insured individuals. Although the federal provision incorporates state intestacy law as a reliable indicator of familial relationships, its purpose is readily distinguishable from that of state intestacy laws, which seek finality in "the orderly settlement of estates" and in the transfer of property. See Trimble v. Gordon, 430 U.S. 762, 771 (1977); see also Carter, 625 F.Supp at 286. By applying the version of the state intestacy law that is most beneficial to the applicant, the SSA furthers the remedial purpose of the Social Security Act, which is "to be broadly construed and liberally applied." Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969).

We infer that 20 C.F.R. § 404.355(b)(4) may also facilitate the efficient review of applications for benefits, since, at least at the first stage of the analysis, the regulation allows for the uniform application of a single version of state law to all applications reviewed at any given time from a particular state. Except in those instances where an applicant is deemed ineligible for benefits under the law in effect at the time of the agency decision, this approach avoids the need for a case-by-case determination of the relevant law based on criteria such as the potential retroactivity of an amended law or the date that the application was filed. In light of these

Even if an applicant does not qualify as a "child" of the decedent in light of state intestacy law, he or she may qualify under sub-section 416(h)(3)(C) of the Act if, prior to the time of the insured's death, the insured (1) acknowledged the applicant in writing as his or her child, (2) was decreed by a court to be the applicant's parent, or (3) was ordered by a court to contribute to the support of the applicant, based on his or her parental relation to the applicant. 42 U.S.C. § 416(h)(3)(C)(i); see also 20 C.F.R. § 404.355(a)(3). Alternatively, the applicant may qualify if the insured "is shown by evidence satisfactory to the Commissioner of Social Security to have been the mother or father of the applicant, and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died." 42 U.S.C. § 416(h)(3)(C)(ii); see also 20 C.F.R. § 404.355(a)(4).

The SSA has, however, interpreted 42 U.S.C. § 416(h)(3) to be inapplicable to children who are conceived after the date of an insured's death. See Soc. Sec. Program Operations Manual Sys. § GN 00306.001C. Thus, the SSA will award child's survivor insurance

---

considerations, we believe that the SSA's interpretation of 42 U.S.C. § 416(h)(2)(A), as embodied in 20 C.F.R. § 404.355(b)(4), is both permissible and reasonable, and is therefore entitled to judicial deference. See Chevron, 467 U.S. at 865.

14

benefits to children conceived after the date of an insured's death only if the applicant is eligible to inherit under state intestacy law, pursuant to 42 U.S.C. § 416(h)(2)(A).

### ii. "Dependent"

To be awarded child's survivor insurance benefits, an applicant who qualifies as a "child" under the Act must also be deemed to have been "dependent" on the insured at the time of the insured's death. Id. at § 402(d)(1)(C)(ii). An applicant is presumed "dependent" on the insured at the time of the insured's death unless it is shown both that the insured was not living with or contributing to the support of the applicant at the time of the insured's death, and that the applicant was not the "legitimate" child of the insured, as statutorily defined. 42 U.S.C. § 402(d)(3). Anyone who qualifies as a "child" under §§ 416(h)(2)(A), (h)(2)(B), or (h)(3) of the Act is deemed to be "legitimate" under § 402(d)(3) and, consequently, presumed to have been dependent on the insured at the time of the insured's death. See id.; 20 C.F.R. §§ 404.355(a)(1),(b) & 404.361(a); Mathews v. Lucas, 427 U.S. 495, 514 n. 17 (1976) (expanding statutory definition to include applicants who are deemed a "child" of the insured under § 416(h)(2)(A)).

15

**b. New York Intestacy Law**

New York's Estates, Powers and Trusts Law ("EPTL") provides that the property of an intestate decedent should, where applicable, be distributed among the spouse and any surviving issue of the decedent.[6] N.Y. EST. POWERS & TRUSTS § 4-1.1(a)(1). EPTL § 4-1.1(c) provides that "[d]istributees of the decedent, conceived before his or her death but born alive thereafter, take as if they were born in his or her lifetime."[7] Id. at § 4-1.1(c); see also In re Peabody, 5 N.Y.2d 541, 546, 158 N.E.2d 841, 844 (1959); Mason v. Jones, 1848 WL 4880 (Sup. Ct. N.Y. Cnty. 1848). Notably, New York courts have consistently held that the distribution of property in intestacy "must be to decedent's heirs and next of kin determined as of the date of her death." In re Draper's Will, 40 Misc. 2d 611, 612, 243 N.Y.S.2d 610, 611 (Sur. 1963); In re Butler's Will, 9 Misc. 2d 892, 897, 170 N.Y.S.2d 767, 772 (Sur. 1957).

In the case of the "non-marital children" of the decedent,[8] intestate-succession rights depend in part on whether the non-

---

[6] "Issue" is defined as "the descendants in any degree from a common ancestor." N.Y. EST. POWERS & TRUSTS § 1-2.10.
[7] The EPTL does not define the term "conceived."
[8] The term "non-marital child" replaced the more offensive terms "illegitimate" and "out of wedlock" previously utilized in New York's inheritance law. See In re Poldrugovaz, 50 A.D.3d

marital child qualifies as the decedent's "legitimate" child, as statutorily defined under EPTL § 4-1.2. EPTL § 4-1.2 was most recently amended, effective April 27, 2010. Under the prior 1994 version of the law, a non-marital child could establish legitimacy for purposes of inheriting from his or her father if, inter alia, the child could establish paternity by "clear and convincing evidence" and could show that the father "openly and notoriously" acknowledged the child as his own. See N.Y. Est. Powers & Trusts § 4-1.2(a)(2)(C) (1994) (amended 2010). As amended, the EPTL now provides that a non-marital child may demonstrate his or her legitimacy if "paternity has been established by clear and convincing evidence, which may include, but is not limited to: (i) evidence derived from a genetic marker test, or (ii) evidence that the father openly and notoriously acknowledged the child as his own." Id. at § 4-1.2(a)(2)(C) (2010). Thus, to qualify as legitimate, a non-marital child is now required to satisfy only the "clear and convincing evidence" standard for proof of paternity. Although a father's open and

---

117, 124, 851 N.Y.S.2d 254, 260 (2d Dep't 2008). Nowhere, however, does the EPTL explicitly define the term "non-marital child." We understand it to mean a child who was neither born nor conceived while his or her parents were legally married to one another, and who was not legitimated after the date of birth by some operation of law. See, e.g., In re Estate of Uhl, 33 A.D.3d 181, 181-82, 818 N.Y.S.2d 403, 404 (4th Dep't 2006); In re Michael R., 7 Misc. 3d 250, 251, 793 N.Y.S.2d 710, 711 (Sur. 2004). As noted previously, the legal meaning of "conception" is ambiguous under New York law.

notorious acknowledgement of a child as his own may satisfy that
test, it is no longer a separate prerequisite to establishing
the legitimacy of a non-marital child. See In re Estate of Betz,
74 A.D.3d 1459, 1462 n.1, 903 N.Y.S.2d 557, 560 n.1 (3d Dep't
2010).


**V. Analysis**


In plaintiff's initial motion papers, she argued that B.B.
satisfied the definition of "child" under 42 U.S.C. § 416(e)
solely by virtue of his biological relationship to his father.
(Pl. Mem. in Supp. of Pl.'s Mot. for J. 8-12). However, in
Capato, the Supreme Court rejected this reading of § 416(e) and
held that the SSA's requirement that applicants must satisfy at
least one of the criteria under § 416(h) to qualify as a "child"
must be afforded judicial deference. 132 S. Ct. at 2033. As a
result, plaintiff now concedes that B.B.'s eligibility under §
416(e) hinges on whether he satisfies at least one of the
statutory criteria outlined in § 416(h) of the Act. (Brisman's
June 5, 2012 letter to Ct. at 5-6). She argues that, even under
this standard, B.B. qualifies as a "child" because he is
eligible to inherit from his father under New York intestacy
law. (Id.). She asserts that B.B. should not be viewed as a non-
marital child, in light of New York's "liberal and inclusive

18

definition of 'legitimacy.'" (Pl. Mem. in Supp. of Pl.'s Mot. for J. 13). In the alternative, she argues that, even if classified as a non-marital child, B.B. qualifies as the decedent's legitimate child under the 2010 amended version of New York's EPTL § 4-1.2. (Id. at 15-16; Brisman's June 5, 2012 letter to Ct. at 6). She further argues that, in light of B.B.'s purported legitimacy under New York law, he also qualifies as "dependent" on the insured, as required by 42 U.S.C. § 402(d)(1)(C). (See Pl. Mem. in Supp. of Pl.'s Mot. for J. 13-15).

Defendant argues that, according to SSA guidelines, a posthumously conceived child, such as B.B., may only qualify as a "child" if he or she is eligible to inherit under state intestacy law, and is otherwise "categorically unable to satisfy" the alternative criteria outlined in § 416(h)(3) of the Act. (Def. Mem. in Supp. of Mot. for J. 5 n. 4). In concluding that B.B. is ineligible to inherit under New York intestacy law, defendant asserts several arguments. Initially, defendant argues that B.B. had neither been born nor conceived as of the date of his father's death, and therefore is unable to take from his father's intestate estate, under New York law. (Id. at 14; Def. Opp'n Mem. 11). Defendant bases this argument on his conclusion that "New York has long defined a posthumous child as a child

who was in gestation at the death of the decedent, but subsequently born alive." (Def. Opp'n Mem. 11) (citing In re Thomas, 118 Misc.2d 456, 457, 460 N.Y.S.2d 716, 717 (Sur. 1983), and Marsellis v. Thalimer, 2 Paige Ch. 35 (N.Y. Ch. 1830)). Defendant further argues that New York's intestacy statute does not explicitly mention posthumously conceived children, and therefore does not provide inheritance rights to such individuals. (Def. Mem. in Supp. of Mot. for J. 14). Lastly, defendant argues that under the relevant intestacy law,[9] B.B. cannot satisfy the "open and notorious" standard to establish his inheritance rights as a non-marital child. (Ramirez-Fisher's June 8, 2012 letter to Ct. at 2; Def. Opp'n Mem. 11-12).

Defendant also asserts that because B.B. was born after his father's death, he can neither demonstrate actual dependence on the insured nor qualify for the statutory presumption of dependence pursuant to § 402(d) of the Social Security Act. (Def. Opp'n Mem. 8-10). Defendant rebuts plaintiff's assertion that B.B. is legitimate under New York law, arguing that B.B. was conceived after the legal termination of his parents'

---

[9] We note that at certain points defendant's argument focuses on the intestacy law in effect at the time of the decedent's death, and at other times it cites the law in effect at the time of the agency's final decision, which defendant asserts was October 29, 2009. (See Ramirez-Fisher's June 8, 2012 letter to Ct. at 2; Def. Opp'n Mem. 11-12).

marriage, which occurred upon the death of his father, and that he does not otherwise satisfy the EPTL's definition of legitimacy. (Id. at 10).

We begin our analysis by reviewing B.B.'s eligibility to inherit from his father pursuant to New York intestacy law. We then discuss B.B.'s potential eligibility for child's survivor insurance benefits under the alternative definitions of "child" set forth in 42 U.S.C. § 416(h)(3).

### a. B.B.'s Status as a "Child," as Determined by Reference to New York Intestacy Law

In order to qualify to inherit from his father under New York intestacy law, B.B. must satisfy three criteria. First, he must be deemed the "issue" of the decedent. N.Y. EST. POWERS & TRUSTS § 4-1.1(a). Second, he must qualify as his father's "legitimate" child. Id. at § 4-1.2. Finally, he must have been in existence or conceived as of the time of his father's death. See, e.g., Clark v. Cammann, 160 N.Y. 315, 329, 54 N.E. 709, 711 (1899); In re Bruce's Will, 38 Misc. 2d 1035, 1038, 239 N.Y.S.2d 642, 646 (Sur. 1963).

Defendant does not dispute that B.B. is his father's issue, as defined by EPTL § 1-2.10. (See Def. Mem. in Supp. of Mot. for J. 13-14). Accordingly, we turn our attention to the remaining two criteria for eligibility under New York intestacy law -- legitimacy and conception.

### i. Is B.B. "Legitimate" Within the Meaning of New York Intestacy Law?

As traditionally understood at common law, a child who is born or conceived while his or her parents are married to one another is considered "legitimate" for purposes of inheriting through intestacy. See In re Sheffer's Will, 139 Misc. 519, 521, 249 N.Y.S. 102, 105 (Sur. 1931). New York also provides several alternative statutory mechanisms by which a non-marital child may be deemed "legitimate" under state intestacy law.[10] N.Y. EST. POWERS & TRUSTS § 4-1.2(a)(2)(A)-(C).

---

[10] Plaintiff argues that B.B. should be regarded as a marital child in view of New York's "liberal and inclusive definition of 'legitimacy.'" This assertion is unavailing. (See Pl. Mem. in Supp. of Pl.'s Mot. for J. 13). Under the state's liberal standard, B.B. may be deemed "legitimate," within the meaning of the EPTL, regardless of his status as a marital or a non-marital child. That fact plainly does not change the definition of the term "non-marital child," which we discuss above in footnote 8 (at pp. 16-17, supra).

Defendant correctly notes that the death of a spouse terminates a legal marriage. (See Def. Mem. in Supp. of Mot. for J. 14 n. 11); see also Hunt v. Hunt, 75 Misc. 209, 211, 135 N.Y.S. 39, 41 (Sup. Ct. Kings Cnty. 1912), modified, 154 A.D. 833, 139 N.Y.S. 413 (2d Dep't 1913) (citing In Bell v. Bell, 181 U.S. 176, 179 (1901)); Williamson v. Parisien, 1 Johns. Ch. 389, 393 (N.Y. Ch. 1815). To be deemed a marital child and qualify as "legitimate" under the traditional definition, B.B. must have already been "conceived" during the time of his parents' marriage. See, e.g., Laura G. v. Peter G., 15 Misc.3d 164, 169, 830 N.Y.S.2d 496, 500 (Sup. Ct. Delaware Cnty. 2007). We discuss the issue of conception in detail in the following section. However, even if B.B. is considered a non-marital child under New York law, we conclude that he satisfies the alternative definition of legitimacy set forth in EPTL § 4-1.2(a)(2)(C).

The 2010 amendment of EPTL § 4-1.2 went into effect after the ALJ rendered his decision on October 29, 2009, but before the Appeals Council issued its notice on May 13, 2010, denying plaintiff's request for an appeal of the ALJ's decision. (See Answer App. 3,9). Because the date of the SSA's final decision in this case is May 13, 2010, Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996) (citing 20 C.F.R. §§ 404.955, 416.1481), SSA regulations required the SSA to apply the 2010 amended version

of New York inheritance law, which was in effect on that date. See 20 C.F.R. § 404.355(b)(4); see also Beeler v. Astrue, 651 F.3d 954, 965 (8th Cir. 2011); Vernoff v. Astrue, 568 F.3d 1102, 1108 n.6 (9th Cir. 2009). Nonetheless, relying on a 1996 decision of the New York Surrogates Court, the Appeals Council incorrectly applied the 1994 version of EPTL § 4-1.2, concluding that "[b]oth the 'clear and convincing' and 'open and notorious' prongs must be met under this statute." (Answer App. 5).

An agency's interpretation of its own regulations generally has "controlling weight unless it is plainly erroneous or inconsistent with the regulation." Udall v. Tallman, 380 U.S. 1, 16-17 (1965) (quoting Bowles v. Seminole Rock Co., 325 U.S. 410, 413-414 (1945)). In this case, we believe that the Appeals Council's failure to apply the 2010 version of New York intestacy law, which was in effect at the time of the agency's final decision, directly contradicted the plain language of 20 C.F.R. § 404.355(b)(4), which states, as an initial matter, that "[w]e will apply the version of State law in effect when we make our final decision on your application for benefits." Only if an applicant is ineligible to inherit under the version of intestacy law in effect at the time of the agency's final decision should the SSA give consideration to prior versions of the law, including the version in effect at the time of the

insured's death. See id.; Beeler, 651 F.3d at 965; McLaughlin v.
Astrue, 2012 WL 2449938, *7 n. 3 (E.D.N.Y. June 27, 2012).


It is possible that defendant intends to argue that, in
applying the 2010 version of EPTL § 4-1.2, the agency must give
effect to the amendment's non-retroactivity[11] and accordingly
apply the version of the law in effect at the time of the
insured's death. (See Ramirez-Fisher's June 8, 2012 letter to
Ct. at 2). If so, we believe that this reading is wholly
inconsistent with 20 C.F.R. § 404.355(b)(4). Sub-section
(b)(4)(i) of the regulation states that the SSA will consider
the retroactivity of subsequent amendments specifically for the
purpose of determining the law in effect as of the date of the
insured's death. But the regulation plainly does not reference
retroactivity with respect to the law in effect at the time of
the agency's final decision, which is the version that is to be
applied in most cases. Indeed, were the agency required to
strictly adhere in all cases to state-law provisions governing
retroactivity, the requirement under 20 C.F.R. § 404.355(b)(4)
that the agency apply the most beneficial version of law for the
applicant would be rendered superfluous. It is axiomatic that

---

[11] The 2010 amendment to EPTL § 4-1.2 states "This act shall
take effect immediately and shall apply to the estates of
decedents dying on or after such date." 2010 N.Y. Sess. Laws
7899-a, § 4 (McKinney); see also Seaton v. County of Suffolk, 78
A.D.3d 1158, 1160, 912 N.Y.S.2d 289, 291 (2d Dep't 2010).

courts should interpret a law so as to avoid such an outcome. See Alliance for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev., 430 F. Supp. 2d 222, 246 (S.D.N.Y. 2006), aff'd, 651 F.3d 218 (2d Cir. 2011) (quoting Duncan v. Walker, 533 U.S. 167, 174 (2001)). The apparent purpose of 20 C.F.R. § 404.355(b)(4), as we read it, is not to perfectly mirror the temporal reach of state intestacy law, but rather to incorporate the state's substantive definition of particular familial relationships in a generous manner, and to apply the version of state law that, among several available options, most favors an award of benefits to an applicant.

In this case, the SSA's reliance on the 1994 version of New York's EPTL § 4-1.2(a)(2)(C) at the time of the agency's final decision was entirely inconsistent with the terms and purpose of 20 C.F.R. § 404.355(b)(4). In its lengthy and substantively detailed notice denying review of plaintiff's case, the Appeals Council noted that plaintiff had proffered sufficiently "clear and convincing evidence" of her husband's paternity.[12] (Answer App. 5). Since "clear and convincing evidence" of paternity is all that is required to establish legitimacy under the 2010

---

[12] Under New York law, clear and convincing evidence is evidence sufficient to satisfy a trier of fact that it is highly probable that an alleged event did, in fact, occur. In re Poldrugovaz, 50 A.D.3d at 127, 851 N.Y.S.2d at 262.

version of EPTL § 4-1.2(a)(2)(C), it is indisputable that had the agency correctly applied the 2010 version of the law, B.B. would have been found to qualify as "legitimate" for purposes of inheriting through intestacy.[13]

### ii. Was B.B. in Existence or Conceived as of the Time of His Father's Death?

Although the EPTL does not explicitly so provide, New York case law clearly demonstrates that the class of intestacy heirs closes as of the date of a decedent's death. See, e.g., Clark, 160 N.Y. at 329, 54 N.E. at 711; In re Bruce's Will, 38 Misc. 2d at 1038, 239 N.Y.S.2d at 646; In re Astor's Will, 5 Misc. 2d 722, 730, 162 N.Y.S.2d 46, 55 (Sur. 1957). Under New York law, in order to qualify for inheritance rights through intestacy, an individual must have been either born or conceived as of the date of the decedent's death. See N.Y. EST. POWERS & TRUSTS § 4-1.1(c); In re Martin B., 17 Misc. 3d at 201, 841 N.Y.S.2d at

---

[13] Plaintiff mistakenly argues that B.B.'s legitimacy under New York intestacy law satisfies the Social Security Act's definition of legitimacy for purposes of establishing an applicant's dependence on the insured, under § 402(d)(3) of the Act. (Pl. Mem. in Supp. of Pl.'s Mot. for J. 13-15). However, the Social Security Act's definition of legitimacy does not incorporate or mirror the definition of legitimacy under state law. 42 U.S.C. § 402(d)(3); see also Mathews, 427 U.S. at 514 n.17. Thus, an applicant deemed legitimate under state law may not necessarily fall within the federal statute's definition of legitimacy for purposes of proving dependence on the insured.

209; In re Guardianships of S.B.E., D.E., 13 Misc. 3d 1212(A),
824 N.Y.S.2d 758 (Sur. 2006). As previously noted, the EPTL does
not define the meaning of "conception."


   It is undisputed that B.B. was born after his father's
death. Therefore, the question before us is whether B.B. -- who
was born of an embryo that was formed and frozen during his
father's lifetime -- may be deemed to have been "conceived," as
understood under New York law, prior to his father's death.
Defendant argues that New York defines "conceived" to mean "in
utero" or "in gestation" and that, accordingly, B.B. was not
conceived prior to his father's death. (Def. Opp'n Mem. 8, 11).
Though plaintiff fails to address the issue of conception in her
motion papers, her letter submission to the Appeals Council
argued that "'Conception' is defined in a medical dictionary as
the formation of a zygote which is a fertilized ovum," and "[i]n
this case, conception occurred when the embryos were created
back in 2004 -- prior to [plaintiff's husband's] death." (Answer
App. 130).


   The vague nature of the term "conception" appears to
reflect the historically limited body of knowledge concerning
human reproduction. Indeed, New York courts have repeatedly
acknowledged the legal imprecision involved in identifying the

onset of pregnancy for purposes of determining inheritance rights. See, e.g., In re Peabody, 5 N.Y.2d at 545, 186 N.Y.S.2d at 268 ("the time of conception [is] a matter rarely if ever capable of precise ascertainment"); In re Wells' Will, 129 Misc. 447, 457, 221 N.Y.S. 714, 725 (Sur. 1927) (respondents "have proved that doubt and mystery had existed during the ages, and still exists, with regard to the accurate period of conception of children.").

It is, perhaps, telling that the most recent edition of Dorland's defines conception as "an imprecise term denoting the formation of a viable zygote." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 400 (32nd ed. 2012) (emphasis added); see also Jean L. Marx, Congressional Confusion over "Conception", SCIENCE, Apr. 24, 1981, at 423 ("As for the scientific meaning of the word conception, three medical dictionaries unequivocally define it as fertilization. But a fourth, the 23rd edition of Stedman's Medical Dictionary, calls it implantation just as unequivocally. If Congress wants to avoid misunderstandings… it will have to use a more specific word -- but not conception."). But, as the New York Court of Appeals has noted, the law does not always correspond to the natural order. See Byrn v. New York City Health & Hospitals Corp., 31 N.Y.2d 194, 201, 335 N.Y.S.2d 390, 393 (1972). Thus, whereas the term "conception" was once

understood as a singular event at the onset of pregnancy, see, e.g., Morris v. Terry K., 60 A.D.2d 728, 729, 401 N.Y.S.2d 310, 311 (3d Dep't 1977); Margie L. v. Gary M., 50 A.D.2d 1009, 377 N.Y.S.2d 225, 226 (3d Dep't 1975) (discussing "date of conception"), medical advances have recently facilitated the separation of the reproductive process into different stages -- including insemination of the ovum and implantation in the uterus. See generally Philip G. Peters, Jr., The Ambiguous Meaning of Human Conception, 40 U.C. DAVIS L. REV. 199 (2006-2007).

As several commentators have observed, New York's legal terminology has not kept pace with these recent advancements in human reproductive medicine, see, e.g., In re Martin B., 17 Misc. 3d at 201, 841 N.Y.S.2d at 209; Peter C. Valentine & Susan P. Witkin, Modern Families: Providing for Posthumously Conceived Children, N.Y.L.J., June 22, 2012, at 9; Erica Howard-Potter, Note, Beyond Our Conception: A Look at Children Born Posthumously Through Reproductive Technology and New York Intestacy Law, 14 BUFF. WOMEN'S L.J. 23, 54-60 (2005-2006), and, as a result, we are now faced with new questions concerning when conception should be understood to occur for legal purposes.

Although the term "conceived" appears in four separate sections of the EPTL, see N.Y. EST. POWERS & TRUSTS §§ 2-1.3(a)(2), 4-1.1(c), 6-5.7(b), 9-1.1(a)(2), it is not defined anywhere in the statute. See generally id. A review of the statute's legislative history also provides little insight into the intended meaning of the statutory term. See, e.g., N.Y. LEGISLATIVE SERVS.' GOVERNOR'S BILL JACKET, ch. 952 (1966); 1992 N.Y. Laws 595, § 8, 215th Legislature (effective Sept. 1, 1992) (amending EPTL § 4-1.1). Compare N.Y. EST. POWERS & TRUSTS § 4-1.1(c) (1992) (granting intestacy rights to children "conceived" as of the date of the decedent's death), with id. § 5-3.2(b) (2006) (granting testamentary inheritance rights to children "in gestation" at the time of the testator's death).[14]

In 1927, the New York Surrogate's Court offered a somewhat basic definition of "conception," explaining that the term, "in its obstetric sense, means the union of the male and female

---

[14] We do not agree with defendant (see Answer App. at 15-16) that the two bills that he cites, which failed to pass the New York Assembly, and which purported to expand the inheritance rights of children born by in vitro fertilization and children posthumously conceived, see A.B. 4421, 230th Leg. (N.Y. 2007); A.B. 5181, 230th Leg. (N.Y. 2007), necessarily support a conclusion that B.B. is ineligible to inherit under the current version of the EPTL. See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 187 (1994) ("failed legislative proposals are 'a particularly dangerous ground on which to rest an interpretation of a prior statute.'") (quoting Pension Benefit Guaranty Corp. v. LTV Corp., 496 U.S. 633, 650 (1990)).

elements of procreation, from which union a new being is developed. It is the means for the propagation of the human species." In re Wells' Will, 129 Misc. at 453, 221 N.Y.S. at 721. This observation, of course, does not offer much concrete guidance.

In the context of inheritance, New York courts have almost uniformly invoked the principle that a child "en ventre sa mère," -- i.e., in the mother's belly -- at the time of a decedent's passing, who is subsequently born alive, is able to inherit from the decedent through intestacy.[15] See, e.g., Endresz v. Friedberg, 24 N.Y.2d 478, 485, 301 N.Y.S.2d 65, 70 (1969); In re Peabody, 5 N.Y.2d at 546, 186 N.Y.S.2d at 844; In re Guardianship of Baby K., 188 Misc.2d 228, 229, 727 N.Y.S.2d 283, 284 (Sur. 2001); In re Thomas, 118 Misc.2d at 457, 460 N.Y.S.2d at 717-18; In re Holthausen's Will, 175 Misc. 1022, 1024, 26 N.Y.S.2d 140, 143 (Sur. 1941). We liken the concept of an unborn child "en ventre sa mère" to the state of a child being in

---

[15]    In other contexts, New York courts have sometimes discussed conception in different terms. See, e.g., Byrn, 31 N.Y.2d at 201, 286 N.E.2d at 889 (in the context of a constitutional challenge to abortion legislation, noting that "a conceived child may be regarded as a person, albeit at a fetal stage."); McDonald v. McDonald, 196 A.D.2d 7, 9, 608 N.Y.S.2d 477, n.1 (2d Dep't 1994) (distinguishing fertilization from gestation in a discussion concerning surrogacy).

utero, or of a woman being pregnant.[16] According to this meaning,
B.B. was not conceived as of the time of his father's death,
since he was not then in his mother's belly. Accord Margaret
Valentine Turano, Practice Commentaries, 17B McKinney's
Consolidated Laws of New York, EPTL § 4-1.1; cf. N.Y. Task Force
on Life & the Law, Executive Summary of Assisted Reproductive
Technologies: Analysis and Recommendations for Public Policy
(April 1998), available at
http://www.health.ny.gov/regulations/task_force/reports_publicat
ions/execsum.htm (last visited February 4, 2013) ("New York law
should provide that an individual who dies before implantation
of an embryo or before a child is conceived other than through
sexual intercourse, using the individual's egg or sperm, is not
a parent of the resulting child.").

Rudimentary though it may be, the traditional "en ventre sa
mère" test serves a functional purpose under current New York
intestacy law. It draws a rational distinction between cases
where the unborn child's arc toward birth has been fully set in
motion biologically and requires no further affirmative
volitional acts on the part of either parent from cases where
additional volitional steps must be taken for a child to be

---

[16] Dorland's defines the term pregnant as "with child;
containing developing young." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY,
at 1510.

born. Conceptually, the principle can be readily understood by judges and lay-persons alike and can be given legal effect without the need for a technical determination as to the exact timing of a particular developmental event, such as insemination, implantation, cellular division, or genetic activation. See generally Peters, Jr., The Ambiguous Meaning of Human Conception, 40 U.C. DAVIS L. REV. 199 (2006-2007). We also believe the concept is broad enough to encompass new reproductive procedures, including artificial insemination, in vitro fertilization, gamete intrafallopian transfer ("GIFT"), and surrogacy,[17] while simultaneously upholding the traditional policy objective of achieving certainty and finality in the distribution of intestate property.

Given this understanding of New York law, "posthumously conceived" children, such as B.B., are ineligible to inherit intestate in New York because, to qualify as an intestacy heir, an individual must have already been living or conceived as of the time of the decedent's death. A posthumously conceived

---

[17] It is unclear, however, how the same principle might be applied to other forms of assisted reproduction, such as embryo lavage transfer, in which an ovum is fertilized in a donor-mother's body before the embryo is transferred to the body of the gestational mother. See Julie E. Goodwin, Not All Children are Created Equal: a Proposal to Address Equal Protection Rights of Posthumously Conceived Children, 4 CONN. PUB. INT. L.J. 234, 240 (2004-2005) (discussing various assisted reproductive techniques).

child, by definition, fails to satisfy this requirement. See In re Martin B., 17 Misc. 3d at 201, 841 N.Y.S.2d at 209. But see Woodward v. Comm'r of Soc. Sec., 435 Mass. 536, 542-45 (2002) (holding that because Massachusetts's intestacy statute supersedes common law and does not expressly require that a child be "in existence" as of the date of the decedent, posthumously conceived children may, in limited circumstances, inherit intestate).

We recognize that the New York courts have not yet addressed the reach of the intestacy statute in the precise set of circumstances that we face, and it is certainly possible that they may choose to read conception more broadly, in light of medical advances. That choice, however, should be theirs or the province of the New York State legislature.[18]

---

[18] Although we recognize that a "federal tribunal risks friction-generating error when it endeavors to construe a novel [issue of state law] not yet reviewed by the State's highest court," Arizonans for Official English v. Arizona, 520 U.S. 43, 79 (1997), the district court does not possess the power, which the Second Circuit does have, to certify questions to the New York Court of Appeals. See, e.g., N.Y. CT. RULES § 500.27(a); Penguin Group (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34 (2d Cir. 2010); O'Mara v. Town of Wappinger, 485 F.3d 693, 698 n.7 (2d Cir. 2007). Therefore, we have rendered our best estimate of how New York's highest court would rule in this case, taking into account a variety of resources which we believe the Court of Appeals might consider in deciding the issue currently before us. See Calvin Klein Ltd. v. Trylon Trucking Corp., 892 F.2d 191, 195 (2d Cir. 1989) (citing Francis v. INA Life Ins. Co. of New York, 809 F.2d 183, 185 (2d Cir. 1987)).

In sum, we conclude that, although B.B. qualifies as his father's legitimate issue under §§ 4-1.1 and 4-1.2 of the EPTL, he is, nonetheless, ineligible to inherit through New York intestacy law because he was neither living nor conceived as of the time of his father's death.

### b. B.B.'s Status as a "Child" Under 42 U.S.C. § 416(h)(3)

Having concluded that B.B. does not qualify as a "child" by way of reference to New York intestacy law, we next consider whether B.B. could be eligible under any of the alternative statutory criteria set forth in 42 U.S.C. § 416(h)(3).

In the case of a deceased insured, 42 U.S.C. § 416(h)(3)(C) provides that an applicant may be deemed the "child" of the insured if:

> (i)   Such insured individual --
>
> > (I)   had acknowledged in writing that the applicant is his or her son or daughter,
> >
> > (II)  had been decreed by a court to be the mother or father of the applicant, or
> >
> > (III) had been ordered by a court to contribute to the support of the

applicant because the applicant was his or her son or daughter,

and such acknowledgement, court decree, or court order was made before the death of such insured individual, or

(ii) such insured individual is shown by evidence satisfactory to the Commissioner of Social Security to have been the mother or father of the applicant, and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died.

According to section GN 00306.001C of the SSA's Programs Operations Manual System ("POMS"), an applicant "conceived by artificial means after the [insured's] death cannot be entitled [to benefits] under the Federal law provisions of the Act (section 216(h)(3) [enacted 42 U.S.C. § 416(h)(3)])" and will be eligible for benefits only "if he or she has inheritance rights under applicable State intestacy law." SOC. SEC. PROGRAM OPERATIONS MANUAL SYS. § GN 00306.001C. Relying on this provision of the POMS, the SSA's Appeals Council determined that B.B. is categorically ineligible for benefits under § 416(h)(3). (Answer App. 5). The agency's asserted reason for barring posthumously conceived children from eligibility for "child" status under the alternative criteria set forth in § 416(h)(3) of the Act is based on its determination that each of those criteria requires

that the insured take some form of action during the lifetime of the child. See 70 Fed. Reg. 55656-01, n. 3 (2005).

The POMS manual "is simply an 'interpretive guide' to… formally promulgated regulations, and thus does not have the force of law. Nevertheless, the statutory and regulatory interpretations which it contains are entitled to be given some weight." Shiner v. Sullivan, 793 F. Supp. 1257, 1261 (D. Vt. 1991) (citing St. Mary's Hosp. of Troy v. Blue Cross & Blue Shield Ass'n, 788 F.2d 888, 890 (2d Cir. 1986)); accord Christensen v. Harris Cnty., 529 U.S. 576, 587 (2000) ("agency manuals… lack the force of law [and] do not warrant Chevron-style deference"). The Second Circuit has stated that because POMS "guidelines represent the Commissioner's interpretation of the statutory mandate," they "deserve substantial deference[] and will not be disturbed as long as they are reasonable and consistent with the statute." Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998).

We are careful not to afford undue deference to the agency's reading of 42 U.S.C. § 416(h)(3), a reading that was not subject to public notice-and-comment rulemaking procedures. We are also aware that federal courts have interpreted portions of 42 U.S.C. § 416(h)(3) to permit the award of benefits to

38

children conceived before, but born after, the death of a parent, see, e.g., Adams, 521 F.2d at 660; Green v. Chater, 1995 WL 688918 (S.D.N.Y. Nov. 20, 1995); Parsons v. Health & Human Servs., 762 F.2d 1188, 1191 (4th Cir. 1985); Doran v. Schweiker, 681 F.2d 605, 608-09 (9th Cir. 1982); Hyleman v. Heckler, 719 F. Supp. 437, 439 (W.D.N.C. 1985), and we imagine that an argument could be asserted to extend the reasoning of such cases to posthumously conceived children. However, even reading the Act liberally, we do not believe that such an argument is plausibly supported by the cited provisions.

We agree with defendant that the language of 42 U.S.C. § 416(h)(3)(C) anticipates a child who is already in existence or -- in the case of a conceived but as-yet unborn child -- legally deemed to be in existence. During the lifetime of the insured, the existence of a posthumously conceived child is too speculative to fall within the plain meaning of 42 U.S.C. § 416(h)(3)(C). For example, sub-section (h)(3)(C)(i)(I) requires that the insured acknowledge that "the applicant is his or her son or daughter," not that the potential applicant "will be" his or her child. See Beeler, 651 F.3d at 965-66 ("the statute's use of the definite article -- requiring an 'acknowledg[ment] in writing that the applicant is his... son or daughter' -- indicates that the insured must acknowledge a particular child

in order for that child to be deemed a natural child."). Under sub-section (h)(3)(C)(i)(II), the insured must be decreed by a court to "be the mother or father of the applicant," not the prospective parent of a potential applicant. See also 42 U.S.C. § 416(h)(3)(C)(i)(III) ("the applicant was his or her son or daughter"). Similarly, sub-section (h)(3)(C)(ii) requires that the insured contribute to the support of an existent child, not toward the prospective existence of a future child.

Courts should not construe the Social Security Act to withhold benefits in marginal cases. See Adams, 521 F.2d at 659. Nonetheless, we believe that this case falls beyond the margins of the Act's intended scope. The purpose of child's survivor insurance benefits is to help "those children who lost support after the unanticipated death of a parent." Schafer v. Astrue, 641 F.3d 49, 58 (4th Cir. 2011); see also Adams, 521 F.2d at 659. But in the case of posthumously conceived children, there can be no reasonable expectation of continued support from a parent who died before the child was ever conceived.

We are mindful that posthumously conceived children have no control over the circumstances of their birth, and we do not wish to minimize the fact that a child who is conceived after the death of a parent suffers a form of familial loss and may

indeed face added financial hardship in the absence of the deceased parent. However, the nature of such financial loss is different in nature from the loss experienced by a child who is already in existence or already conceived at the time of the parent's death and for whom prospective survival needs are pressing and immediate when the loss occurs. The difference is highlighted by the fact that, prior to conception, frozen gametes may be viably stored for up to ten years and frozen embryos potentially indefinitely. See Margaret Ward Scott, Comment, A Look at the Rights and Entitlements of Posthumously Conceived Children: No Surefire Way to Tame the Reproductive Wild West, 52 EMORY L.J. 963, 982 (2003). Thus, the surviving potential parent may choose to delay or avoid the birth of such a potential child if, for example, financial constraints make pregnancy or birth inadvisable. Child's survivor insurance benefits provide a safety-net for children who have been unexpectedly left in the lurch as the result of a financial provider's death. Though the needs of children conceived and born after the death of a parent are no less real, they are different in kind from the needs that child's survivor insurance benefits were designed by Congress to address.

In light of these considerations, we find that the SSA's reading of 42 U.S.C. § 416(h)(3)(C), limiting its application to

41

exclude posthumously conceived children, is reasonable and consistent with the language of the provision. In short, B.B. does not qualify as a "child" of the insured within the meaning of 42 U.S.C. § 416(e), and is ineligible for child's survivor insurance benefits under 42 U.S.C. § 402(d)(1).

### c. B.B.'s Dependence on The Insured

In assessing plaintiff's application, the SSA did not address the secondary question of B.B.'s dependence on his father. (Def. Mem. in Supp. of Mot. for J. 5 n. 3). Because we recommend affirming the agency's determination that B.B. does not qualify as a "child" under the Act, we believe that the agency was correct in concluding that it did not have to reach the issue of dependence.

### Conclusion

In sum, we find that though the SSA applied the incorrect version of New York's EPTL, its conclusion was nonetheless correct that B.B. is ineligible to inherit from his father under New York intestacy law, because he was neither living nor conceived as of the date of his father's death. We also find that the agency acted reasonably in deeming B.B. categorically

ineligible under the Social Security Act's alternative definitions of "child," set forth in § 416(h)(3). Accordingly, we recommend that judgment be entered affirming the defendant's final decision to deny plaintiff's application for child's survivor insurance benefits for B.B.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Laura T. Swain, Room 755, 500 Pearl Street, New York, New York, 10007-1312, and to the undersigned, Room 1670, 500 Pearl Street, New York, New York, 10007-1312. Failure to file timely objections may constitute a waiver of those objections, both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636 (b)(1); Fed. R. Civ. Pro. 72, 6(a), 6(e); Thomas v. Arn, 474 U.S. 140 (1985); DeLeon v. Strack, 234 F.3d 84, 86 (2d. Cir. 2000) (citing Small v. Sec'y. of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)).

43

Dated: New York, New York
       February 19, 2013


                              _____
                              MICHAEL H. DOLINGER
                              UNITED STATES MAGISTRATE JUDGE




Copies of this Report & Recommendation are being sent today to:

Melissa B. Brisman, Esq.
Melissa B. Brisman, Esq., LLC
One Paragon Drive, Suite 158
Montvale, NJ 07645
Fax: (201) 505-0097

Leslie A. Ramirez-Fisher, Esq.
United States Attorney's Office
Southern District of New York
86 Chambers Street, 3d Floor
New York, NY 10007
Fax: (212) 637-2750